UNITED STATES, Appellant

v

JOHN N. SCIOLI, Major, U. S. Army, Appellee

7 USCMA 502, 22 CMR 292

No. 8659

Decided January 11, 1957

*First Lieutenant Edward S. Nelson* argued the cause for Appellant, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant Russell L. Brenneman, Jr.*

*Robert H. Hunter, Esq.,* argued the cause for Appellee, Accused. With him on the brief were *Lieutenant Colonel Stanley F. Flynn* and *Captain John F. Christensen.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was convicted by general court-martial of three offenses of dishonorably soliciting an enlisted man to obtain monies on his behalf, in violation of Article 133, Uniform Code of Military Justice, 10 USC § 933, and three offenses of borrowing money from enlisted men, one offense of stealing a letter, one offense of unlawfully opening a letter, and one offense of unlawfully destroying a postal card, all in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to dismissal, total forfeitures, and confinement for two years. The convening authority disapproved the last two offenses mentioned and affirmed only that portion of the sentence which includes dismissal and total forfeitures. A board of review in the office of The Judge Advocate General of the Army held, one member dissenting, that the specification which purported to allege the theft of a letter failed to allege a postal offense, or any other, whereupon the Acting The Judge Advocate General of the Army certified the following issue for our consideration:

"Did the board of review err in holding that the specification alleging the theft of a letter while it was in the custody of an official agency for the transmission of communications fails to state an offense under Article 134?"

The facts need not be recited, for they are not material to our present inquiry.

Specification 4 of Charge II, which is the one that concerns us, purported to allege an offense against the mails under Article 134 of the Code and is phrased in the following terms:

"In that Major John N. Scioli, U. S. Army, 2141st SU, Fort Ritchie, Cascade, Maryland, did at Fort Ritchie, Maryland, on or about 9 July 1954, steal a certain letter addressed to 'Colonel Higgins, Post Commander, Fort Ritchie, Cascade, Maryland', or words to that effect, which said letter was then in the custody of Master Sergeant Odell Bowling, the Post Sergeant Major, an official agency for the transmission of communications, before said letter was received by the person to whom it was directed."

A majority of the board of review was of the opinion that the above specification was fatally defective in that

it failed to allege that the letter in question was "mail matter," in the custody of the Post Office Department, which had not yet been delivered or received. Furthermore, they did not believe that any allegation was contained in the specification which, by fair implication, characterized the subject matter of the theft as mail, thus necessarily concluding that the word "letter" and the phrase "an official agency for the transmission of communications" were not sufficient to cure the deficiencies which they found. Both the majority of the board of review and its dissenting member were sure—and with good reason—that their divergent views flowed naturally from this Court's decision in United States v Lorenzen, 6 USCMA 512, 20 CMR 228. Therefore, an interpretation of that opinion must be the first order of business in our present discussion.

In Lorenzen, supra, the specification alleged that the accused had wrongfully and unlawfully opened a █ package addressed to another, which was then in his custody, before it was received by the person to whom it was directed. We held that the specification was insufficient to allege a postal offense under Article 134 of the Code, saying:

". . . the character of the matter tampered with or obstructed as within the aegis of the Postal Service, or its military counterpart or supplementary service, must be alleged in the specification, either directly or by fair implication, to render the allegation immune to attack."

It would seem that the board of review in this case attached special importance and significance to the words "mail matter" or "Postal Service," terms which may be found in Lorenzen, and therefore concluded that, absent some such descriptive phrase, the specification must fail. Yet we ourselves did not intend to imply that a pleader must, a priori, characterize the subject matter in those terms. We intended to, and did, say no more than that the specification must in some fair manner indicate that a written communication had been deposited for delivery within an official channel for such matters, and that it had been tampered with or taken while in that channel, if it was to be sufficient to allege an offense against the mails. We carefully pointed out that the military offense of interference with the mails under Article 134 was no doubt broader than its civilian counterpart—and necessarily so. We there said:

"It is considered appropriate to observe at this point that the military offense of tampering with or obstructing the mail is not, in our view, the precise offense set forth in 18 USC § 1702, although the pattern is similar. Each serves a separate and useful function, but the military offense must include military channels which do not operate under the Post Office Department. A letter or package mailed by a serviceman does not come under the protection of 18 USC § 1702 until such time as it leaves the military postal center and enters the channels of the United States Postal Service. Department of Defense Bulletin 19–II–50, November 2, 1950. Hence the deterrent of military prosecution is the sole protection afforded such mail prior to that time. In addition, the individual serviceman does not customarily have his own letter box, and therefore the military sanction, to be of any real effectiveness, must run to the point where the mail is actually placed in the hands of the recipient. Moreover, correspondence transmitted through official military channels which never passes through the hands of the Postal Service might well be regarded as 'mail matter' for the purposes of the offense in violation of Article 134."

The view which we expressed above as to the sweep of the military prohibition in this field is not one which we alone think sound. Paragraph 82 Special Regulations Number 65–15–1 dated July 6, 1953, which is a joint regulation applicable to all the Services, provides:

"The secrecy of the mails is inviolable. Tampering with or depredations against mail matter are offenses against the United States and are

504

punishable by law. Mail is considered to be in United States Post Office Department or military postal channels from the time it is deposited in an authorized civilian or military post office or authorized locked mail depository, or is given to a designated military postal clerk or an authorized unit mail clerk or mail orderly for posting, until it is delivered to the addressee in person, or to a representative authorized by him in writing."

As we mentioned in United States v Lorenzen, supra, mail comes within the protection of 18 USC § 1702 only while it is in the hands of the United States Postal Service, including the hands of those servicemen accepted as its agents by the Service. Paragraph 4*f*, SR 65–15–1, supra. Thereafter, if it is to be protected by law while within the military postal or message system, it must be pursuant to military law.

When we turn to the present specification, we find that it alleges the theft of a letter addressed to the post commander, before the letter was received by the person to whom it was directed, and while it was in the custody of Sergeant Odell Bowling, who was an official agency for the transmission of communications. It is true that at no point do the words "mail matter" appear in the pleading before us, but it is apparent from the terms of the specification that a letter was in the hands of one charged with the transmission of communications of that kind at the time when it was intercepted by the accused. In this connection, we point out that the opening of a package, as was alleged in Lorenzen, supra, does not really imply interference with mail matter, but the word "letter" has a more definite connotation in that regard. In Webster's New International Dictionary, Second Edition, page 1419, the word "letter" is defined, in one sense at least, as "a written communication, usually sealed, such as those forming the main body of the first class of mail matter." Clearly, the use of that word in this specification suggests, by fair implication, that the missive was mail matter. That brings us to the allegation concerning Sergeant Bowling's status. At the moment, we are unsure as to the number of official Army agencies which are charged with the transmission of letters. The military postal system and the courier service come to mind at once, and certainly both of those channels need to be protected from interference by unauthorized persons. If there are others, they too should be shielded. We can assume, arguendo, that there are others, for at this time we need merely say that when a specification alleges the theft of a letter, addressed to a designated individual, from the custody of an official Government agency for the transmission of that form of communication, it is sufficient to allege the military offense against the mails covered by Article 134.

Nothing that was said in United States v Smith, 10 CMR 262, reversed on other grounds, 4 USCMA 369, 15 CMR 369, which we quoted from in Lorenzen, supra, militates against the conclusion reached here. There it was alleged that the accused stole a package from a message center before the package was delivered. But there was no allegation that the package was in the custody of the message center; and, by definition, message centers are not charged with the delivery of packages. Paragraph 2, page 177, SR 320–5–1, Dictionary of United States Army Terms, November 24, 1953. Therefore, the board of review had considerable justification for its conclusion that the specification failed to allege an offense against the mails. Even if it be supposed that the board erred in its conclusion, it said nothing in terms of concept which we found erroneous, and it was that aspect which we found useful in United States v Lorenzen, supra.

Both counsel have argued, at some length, the question of whether the evidence is sufficient to show that Sergeant Bowling was an official agency for the transmission of communications. The short answer is that that issue is not now before us. It is sufficient for our purposes that it was alleged that he was, and there is nothing patently improbable about an assignment of that nature.

The certified issue is answered in the affirmative. The decision of the board of review is reversed. The record is returned to that appellate agency for further review in conformity with this opinion.

Judge FERGUSON concurs.

Chief Judge QUINN concurs in the result.